UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Desimber Rose Wattleton, | ) | C/A No. 6:24-cv-4827-BHH-WSB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Atlantic Acceptance Corp., Atlantic | ) | |
| Acceptance Holdings, LLC, Atlantic Auto | ) | |
| Finance Group, LLC, Agora Data Inc., | ) | |
| Agora Capital, Agoratrade, LLC, Westlake | ) | |
| Services, LLC d/b/a Westlake Financial | ) | |
| Services, Walter Auto Loan Trust, Walt | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on Westlake Services, LLC d/b/a Westlake Financial Services' ("Westlake") Motion to Dismiss (ECF No. 71); Agora Data Inc. ("Agora Data"), Agora Capital, and Agoratrade, LLC's ("Agoratrade") (collectively "the Agora entities") Motion to Dismiss (ECF No. 72); Walter Auto Loan Trust ("Walter Auto") and Walt, LLC's ("Walt") (collectively "the Walt entities") Motion to Dismiss (ECF No. 78); and Desimber Rose Wattleton's ("Plaintiff") Motion for Service of Process (ECF No. 92). Plaintiff is proceeding *pro se*, and, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e) (D.S.C.), this United States Magistrate Judge is authorized to review all pretrial matters in cases involving *pro se* litigants and submit findings and recommendations to the district court.

1

## PROCEDURAL BACKGROUND

Plaintiff filed a Complaint against the Agora entities and Westlake, as well as Atlantic Acceptance Corp., Atlantic Acceptance Holdings, LLC, and Atlantic Auto Finance Group, LLC (collectively "the Atlantic entities"), on September 5, 2024.  ECF No. 1.  The Court issued an Order authorizing service of process on October 29, 2024 ("First Serve Order").  ECF No. 22.  A summons was issued on the same date, with service due by January 27, 2025.  ECF No. 23.

On December 2, 2024, Westlake filed a Motion to Dismiss, ECF No. 27, and a Motion for Protective Order and Motion to Stay, ECF No. 28.  On December 17, 2024, the Agora entities filed a Motion to Dismiss, ECF No. 40, and a Motion for Protective Order and Motion to Stay, ECF No. 41.  Plaintiff filed Responses to these Motions.  ECF Nos. 31; 32; 45; 46.  Plaintiff also filed a Motion to Amend her Complaint on December 26, 2024.  ECF No. 47.

The Court issued an Order on February 10, 2025, granting Plaintiff's Motion to Amend, finding Westlake and the Agora entities' Motions to Dismiss moot, and denying Westlake and the Agora entities' Motions for Protective Order and Motions to Stay.  ECF No. 63.  The Clerk of Court filed Plaintiff's Amended Complaint on the same date.  ECF No. 64.  In her Amended Complaint, Plaintiff brought claims for (1) breach of contract, (2) fraud, (3) violation of the Fair Credit Reporting Act ("FCRA"), (4) negligence, (5) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), (6) civil conspiracy, (7) violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), and (8) conversion against the Atlantic entities, the Agora entities, Westlake, and the Walt entities.  *Id.*  The Court issued an Order authorizing service of process on February 24, 2025 ("Second Serve Order").  ECF No. 68.  A summons was issued on February 24, 2025, with service due by May 27, 2025.  ECF No. 69.

2

On February 24, 2025, Westlake file a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6).  ECF No. 71.  The Agora entities filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6) on the same date.  ECF No. 72.  On February 25, 2025, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if she failed to respond adequately to these Motions to Dismiss.  ECF No. 75.  The Walt entities filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6) on March 26, 2025.  ECF No. 78.  The Court issued an Order pursuant to *Roseboro*, 528 F.2d 309, on March 27, 2025, advising Plaintiff of the summary judgment and dismissal procedures and the possible consequences if she failed to respond adequately to the Motion.  Plaintiff filed separate Responses to the three Motions to Dismiss on March 28, 2025.  ECF Nos. 82; 83; 84.  Westlake, the Agora entities, and the Walt entities filed Replies on April 4, 2025.  ECF Nos. 88; 86; 87.  Also on April 4, 2025, Plaintiff filed a Motion for Service of Process.  ECF No. 92.  Westlake and the Agora entities filed Responses to Plaintiff's Motion on April 17, 2025.  ECF Nos. 95; 96.  Plaintiff filed a Reply on April 18, 2025.  ECF No. 99.  These matters are ripe for review.

## FACTUAL ALLEGATIONS

**Federal Court Action**

In her Amended Complaint, Plaintiff alleges that she visited A&K Auto Sales and Leasing, LLC ("A&K Auto") on October 7, 2022, and discussed her desire to purchase a vehicle because she was in need of reliable transportation and was trying to rebuild her credit to purchase a home.  ECF No. 64 ¶ 11.  Plaintiff decided to purchase a vehicle, and she was informed that she was approved for financing through Atlantic Acceptance Corp.  *Id.* ¶¶ 12-13.  The purchase price of

the vehicle was $27,400, and Plaintiff paid $2,000 as a down payment. *Id.* ¶¶ 13, 56. Because it was late in the evening, Plaintiff was asked to return to A&K Auto the following day to complete all of the paperwork, but she was allowed to place insurance on the vehicle and drive the vehicle home that evening. *Id.* ¶ 13.

The following day, Plaintiff returned to A&K Auto and completed the paperwork, including a retail purchase agreement and retail installment contract ("RIC"). ECF No. 64 ¶ 14. Plaintiff was informed that Atlantic Acceptance Corp. was the finance company and lienholder. *Id.* Plaintiff appears to allege that Atlantic Acceptance Corp. sold her loan to Agora Data through a master receivables agreement ("MRA") and that Agora Data hired Westlake to service the loan. *Id.* ¶¶ 39, 74. Plaintiff contends that she received a phone call from Atlantic Acceptance Corp. and an email from Westlake on October 28, 2022, telling her to direct her payments for the vehicle to Westlake. *Id.* ¶ 15. Plaintiff set up her account and commenced making payments on the vehicle. *Id.*

Plaintiff alleges that she received five notifications that hard credit inquiries were made to her Equifax Credit Report on January 4, 2023. ECF No. 64 ¶ 17. Plaintiff reached out to A&K Auto about these inquiries, and she was informed that "everything [was] working in [her] favor" and she was "100 per cent good." *Id.* ¶ 18. The following day, Plaintiff received six notifications that hard inquiries were made. *Id.* Plaintiff again called A&K Auto about these inquiries. *Id.* ¶ 19. Plaintiff was informed that Atlantic Acceptance Corp. "went belly up," A&K Auto had not received payment for Plaintiff's vehicle, and A&K Auto had secured another lender for Plaintiff. *Id.* Plaintiff was informed that she needed to return to A&K Auto to sign the new paperwork. *Id.* Plaintiff alleges that she called Westlake and informed it about Atlantic Acceptance Corp., and Westlake was unaware of this information. *Id.* Westlake processed another payment from Plaintiff

4

regarding the vehicle on that date. *Id.* Plaintiff contends that the Walt entities, Agora Data, and Westlake pursued payment from her for an "illegitimate debt," did not transfer Plaintiff's payments to Atlantic Acceptance Corp. or A&K Auto, and did not return the payments to her. *Id.* ¶¶ 64-65, 71-73.

Plaintiff alleges that she contacted A&K Auto and informed them that Westlake did not know about Atlantic Acceptance Corp. dissolving and accepted a payment from her. ECF No. 64 ¶ 20. Accordingly, Plaintiff was not going to return to A&K Auto to "essentially purchase the vehicle a second time …." *Id.* On February 7, 2023, Plaintiff received notice that her FICO score had decreased. *Id.* ¶ 21. Plaintiff contends that "[t]here was zero contact" between her and A&K Auto from January 6, 2023, through February 26, 2023. *Id.*

Between 11:00 p.m. and 12:00 a.m. on February 25, 2023, Roy Owens ("Owens") of Roy Owens towing attempted to repossess the vehicle from Plaintiff's residence. ECF No. 64 ¶ 22. Plaintiff initially believed that the vehicle was being stolen because she had not received any notice or otherwise been made aware of any pending repossession. *Id.* Plaintiff responded "frantically," ran out of her house to see what was happening, stepped off an embankment in her yard, and fractured her left foot and sprained her left ankle. *Id.* ¶¶ 22, 88. Owens informed Plaintiff that A&K Auto was repossessing the vehicle, and Plaintiff explained that there was no legal right to repossess the vehicle and that A&K Auto was not the lienholder. *Id.* ¶ 23. A dispute ensued, and "Plaintiff would not allow … Owens to depart with the vehicle." *Id.* The Greenville County Police Department was called to the residence. *Id.* ¶ 24. Owens produced a repossession order form dated February 23, 2023, which showed that the creditor was A&K Auto. *Id.*

Plaintiff informed an officer about the situation, and the officer told Plaintiff that this was a civil matter; she could seek remedy with the courts; he would allow Owens to repossess the

vehicle since he had produced documentation authorizing the repossession; and if she did not allow Owens to do his job, she would be arrested for disturbing the peace. ECF No. 64 ¶ 25. Plaintiff's children and sister, as well as neighbors, witnessed these events. *Id.* ¶ 26. Plaintiff then agreed to exit the vehicle. *Id.*

Plaintiff alleges that she was later informed by someone from A&K Auto that Atlantic Acceptance Corp. "had gone bankrupt" and "released the car back to A&K Auto." ECF No. 64 ¶ 28. A&K Auto informed Plaintiff that they had lost nearly $100,000 due to Atlantic Acceptance Corp. and "there were about 5 vehicles caught up in this bankruptcy …." *Id.* ¶ 29. A&K Auto offered to "make this right" and recoup Plaintiff's payments from Westlake, deduct these payments from the cost of the vehicle, and get Plaintiff refinanced "at a better rate." *Id.* ¶¶ 29-31. Plaintiff alleges that A&K Auto informed her that Westlake should not have been accepting payments because Atlantic Acceptance Corp. never paid A&K Auto for the vehicle. *Id.* ¶ 32. Plaintiff submits that she decided to not return to A&K Auto to refinance the vehicle. *Id.* ¶ 33.

Plaintiff also sets forth information related to Atlantic Acceptance Corp.'s bankruptcy and Agoratrade, Agora Data, Walter Auto, and Walt LLC's lawsuit against the Atlantic entities, among others. ECF No. 47-1 at ¶¶ 38-54. The Court takes judicial notice of these actions. *See In re Atlantic Acceptance Corp.*, No. 23-11339-MAM (Bankr. S.D. Fla.); *Walter Auto Loan Trust v. Atlantic Acceptance Corp.*, No. 9:23-cv-80007-WPD (S.D. Fla.).[1]

---

[1] *See Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (explaining that courts "may properly take judicial notice of matters of public record"); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").

**State Court Action**

The Court also takes judicial notice that Plaintiff previously filed a lawsuit in the Greenville County Court of Common Pleas on March 1, 2023, against several parties, including Westlake, Atlantic Acceptance Corp., A&K Auto, and Roy Owens Towing. *See* Greenville County Public Index, https://www2.greenvillecounty.org/SCJD/PublicIndex/PISearch.aspx at Case No. 2023-CP-23-01039 (last visited June 20, 2025). In her state court complaint, Plaintiff brought claims for (1) breach of contract, (2) breach of good faith and fair dealing, (3) civil conspiracy to commit fraud, (4) predatory lending, (5) violation of the FCRA, (6) false and misleading representations, (7) invasion of privacy, (8) emotional distress, and (9) promissory estoppel. Plaintiff subsequently filed an amended complaint on March 8, 2023, adding a claim for contributory negligence.

After Atlantic Acceptance Corp. filed bankruptcy, Plaintiff filed a voluntary dismissal of Atlantic Acceptance Corp. in the state court action. Moreover, Plaintiff settled with A&K Auto. ECF No. 64 ¶ 52. Westlake filed a motion to dismiss pursuant to South Carolina Rule of Civil Procedure 12(b)(6) on April 21, 2023, and a memorandum in support on June 29, 2023. The circuit court granted Westlake's motion to dismiss by issuing a Form 4 Order on July 10, 2023, but the court permitted Plaintiff 10 days to replead her causes of action against Westlake. Plaintiff filed a second amended complaint on the same date, alleging claims for breach of contract, breach of good faith and fair dealing, fraud, violation of the FCRA, and negligence. Westlake filed a second motion to dismiss on July 26, 2023. The circuit court granted Westlake's motion to dismiss on September 18, 2023, by issuing a Form 4 Order and noting that a formal order was forthcoming. Prior to the issuance of the formal order, Plaintiff filed an appeal. The South Carolina Court of Appeals dismissed Plaintiff's appeal and found that the Form 4 Order was not immediately appealable given the forthcoming formal order. *See* South Carolina Appellate Case Management

System, https://www.sccourts.org/ACMS/index.cfm at case number 2023-001469 (last visited June 20, 2025). The circuit court issued a formal order on October 9, 2023, and Plaintiff did not appeal that order. In her Amended Complaint in the instant matter, Plaintiff asserts that she "decided not to pursue the [a]ppeal further and opted instead" to file a complaint in federal court. ECF No. 64 ¶¶ 51-53.

## APPLICABLE LAW AND ANALYSIS

### Service of Process

#### 1. Westlake and the Agora Entities

Westlake and the Agora entities argue that Plaintiffs' claims against them should be dismissed for insufficient service of process. ECF Nos. 71 at 5; 72 at 3-4. A defendant may move to dismiss a case under Federal Rule of Civil Procedure 12(b)(5) based on "insufficient service of process." Fed. R. Civ. P. 12(b)(5). Federal Rule of Civil Procedure 4 provides that a domestic corporation, partnership, or other unincorporated association must be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made" or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process ...." Fed. R. Civ. P. 4(e), (h). Further,

> If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. ...

Fed. R. Civ. P. 4(m).  "The plaintiff bears the burden of proving adequate service once a motion to dismiss for insufficient service of process has been filed pursuant to Fed. R. Civ. P. 12(b)(5)." *Scott v. Md. State Dep't of Labor*, 673 F. App'x 299, 304 (4th Cir. 2016).

Plaintiff has not met her burden of showing that she properly served Westlake and the Agora entities.  Plaintiff filed a Certificate of Service regarding her first Complaint on November 21, 2024, claiming that she served Westlake, the Agora entities, and Atlantic Auto Finance Group, LLC by serving their registered agents via certified mail.  ECF No. 25 at 6-11.  Moreover, Plaintiff filed a Certificate of Service regarding her Amended Complaint on March 11, 2025, indicating that she served her Amended Complaint on Westlake and the Agora entities' counsel via certified mail. ECF No. 77.  Plaintiff's attempts do not satisfy the requirements of Federal Rule of Civil Procedure 4.  *See* ECF Nos. 25; 77; *see also* Fed. R. Civ. P. 4; Rule 4(d)(3), (8), SCRCP; Cal. Civ. P. Code § 415.30, 416.40; Tex. R. Civ. P. 106.[2]

However, "[d]ismissal of an action against a defendant under Rule 12(b)(5) for insufficiency of service is within the discretion of the court and will not necessarily be granted when there is no prejudice to the defendant and proper service is likely to be accomplished." *Henderson v. Scott*, C/A No. 4:23-5280-SAL-TER, 2024 WL 2333950, at *2 (D.S.C. May 1, 2024) (citation and internal quotation marks omitted).  "When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process." *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984).  "Generally, when service of process gives the defendant actual notice of the pending action, [a] court[ ] may

---

[2] California is where Plaintiff attempted service on Westlake and where one of Westlake's registered agents is located, ECF Nos. 25 at 8; 27 at 6, and Texas is where the Agora entities are located, ECF No. 40 at 4.

construe Rule 4 liberally to effectuate service and uphold the jurisdiction of the court." *Aten v. Boan*, C/A No. 3:20-cv-01390-DCC-KDW, 2020 WL 8455070, at *2 (D.S.C. Oct. 9, 2020); *see Scott*, 673 F. App'x at 304 ("[T]he real purpose of service of process is to give notice to the defendant, and mere technicalities should not stand in the way of consideration of a case on its merits.") (internal citations and quotation marks omitted). In light of Plaintiff's good faith attempts to serve Westlake and the Agora entities, her *pro se* status, the lack of prejudice to Westlake and the Agora entities, and Westlake and the Agora entities' actual notice of this lawsuit, the undersigned recommends that the district court decline to dismiss this case under Federal Rule of Civil Procedure 12(b)(5) and uphold the Court's jurisdiction. However, as discussed below, the undersigned recommends that the district court dismiss Westlake and the Agora entities pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 2. The Atlantic Entities

The Atlantic entities have not appeared in this matter. The Court's First Serve Order directed as follows:

> ***Because Plaintiff paid the full filing fee, Plaintiff is responsible for service of process under Rule 4 of the Federal Rules of Civil Procedure.*** Therefore, Plaintiff shall serve the Complaint, Summons, and this Order on Defendants in accordance with Rule 4. The Court cannot sua sponte serve initial process on any fee-paying litigant's behalf, and the Court's electronic case filing system does not effect initial service on any defendant. …
>
> **Under Rule 4(m), unless a Defendant is served within 90 days after the summons is issued as directed by this Order, that particular unserved Defendant may be dismissed without prejudice from this case.**

ECF No. 22 at 2 (emphasis in original). Plaintiff filed a Certificate of Service on November 21, 2024, indicating that she served her Complaint on Atlantic Acceptance Holdings, LLC and Atlantic

Acceptance Corp. by serving their alleged counsel from another lawsuit via certified mail.  ECF No. 25 at 1-3.  Plaintiff also indicated that she tried to effect service on Atlantic Auto Finance Group, LLC, by serving its registered agent.[3]  *Id.* at 4-5.

In the Order granting Plaintiff's Motion to Amend her Complaint, the Court noted that Westlake and the Agora entities questioned whether they had been properly served.  ECF No. 63 at 11.  The Court directed Plaintiff to "serve the Amended Complaint on the registered agents for all Defendants …."  *Id.*  The Court's Second Serve Order contained the same language set forth above from the First Serve Order and the directive to serve Defendants via their registered agents. ECF No. 68.  Nonetheless, Plaintiff filed a Certificate of Service on March 11, 2025, indicating that she served her Amended Complaint on the Atlantic entities' alleged counsel from another lawsuit via certified mail.  ECF No. 77 at 1.

Plaintiff has failed to provide proof of proper service pursuant to Federal Rule of Civil Procedure 4.  Moreover, the Court finds that Plaintiff has not shown good cause for her failure to serve the Atlantic entities, and an extension is therefore not warranted.  Accordingly, the undersigned recommends that the district court dismiss the Atlantic entities without prejudice under Rule 4(m).[4]

---

[3] Plaintiff has not attached proof that she mailed the appropriate documents with "return receipt requested and delivery restricted to the addressee," Rule 4(d)(3), (8), SCRCP, or that she served Atlantic Auto Finance Group, LLC's registered agent in person, Fl. Stat. § 48.062.  *See* ECF No. 25 at 4-5.

[4] To the extent Plaintiff properly serves the Atlantic entities during the time period for filing objections to this Report and Recommendation, this matter should be recommitted to the undersigned United States Magistrate Judge.

**Federal Rule of Civil Procedure 12(b)(6) - Standard of Review**

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 531 (D.S.C. 2014) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Rule 8(a) sets forth a liberal pleading standard, which requires only a "short and plain statement of the claim showing the pleader is entitled to relief, in order to give the defendant fair notice of what ... the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotation marks omitted). "In assessing the sufficiency of a complaint, [the court] assume[s] as true all its well-pleaded facts and draw[s] all reasonable inferences in favor of the plaintiff." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (citing *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 570). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

**Westlake's Motion Pursuant to Rule 12(b)(6)**

Westlake argues that Plaintiff's claims against it should be dismissed based on res judicata. ECF No. 71 at 7-9. Res judicata may be a basis for dismissal under Federal Rule of Civil Procedure 12(b)(6). *Toney v. LaSalle Bank Nat'l Ass'n*, 896 F.Supp.2d 455, 464 (D.S.C. 2012) ("[R]es judicata or claim preclusion challenge is to be considered pursuant to Rule 12(b)(6)") (citing *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 720 (4th Cir. 2006)). "[A]n affirmative defense such

as res judicata may be raised under Rule 12(b)(6) only if it clearly appears on the face of the complaint." *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000). "[W]hen entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." *Id.*

The Court looks to South Carolina law to determine the preclusive effect of Plaintiff's previous state court action. *See Allen v. McCurry*, 449 U.S. 90, 95-96 (1980) ("The federal courts generally have also consistently accorded preclusive effect to issues decided by state courts. Thus, res judicata … not only reduce[s] unnecessary litigation and foster[s] reliance on adjudication, but also promote[s] the comity between state and federal courts that has been recognized as a bulwark of the federal system."); *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161-62 (4th Cir. 2008) ("Generally, the preclusive effect of a judgment rendered in state court is determined by the law of the state in which the judgment was rendered."); *Wilder v. Krebs*, C/A No. 2:17-763-CMC-MGB, 2019 WL 1862648, at *2 (D.S.C. Apr. 25, 2019) ("If the prior proceeding is a state court one, federal courts use the law of the state to determine if preclusion applies."); *Zimmerman v. Coll. of Charleston*, C/A No. 2:12–cv–00505–DCN, 2013 WL 4523585, at *3 (D.S.C. Aug. 26, 2013) (noting that "[t]o determine the preclusive effect of a state court judgment, federal courts look to state law" and applying South Carolina law to the doctrine of res judicata).

In South Carolina, "[r]es judicata bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties." *Judy v. Judy*, 712 S.E.2d 408, 414 (S.C. 2011) (citation omitted). "Under the doctrine of res judicata, [a] litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit." *Id.* (citation omitted). "Res judicata's fundamental purpose is to ensure that no one should be twice sued for the same

cause of action." *S.C. Pub. Int. Found. v. Greenville Cnty.*, 737 S.E.2d 502, 507 (S.C. Ct. App. 2013) (citation omitted). "Res judicata bars a second suit where there is (1) identity of parties; (2) identity of subject matter; and (3) adjudication of the issue in the first suit." *Yelsen Land Co., Inc. v. State*, 723 S.E.2d 592, 596 (S.C. 2012).

Plaintiff filed suit against several defendants, including Westlake, in the Greenville County Court of Common Pleas based on her purchase of the subject vehicle and its subsequent repossession. In her second amended complaint in the state court action, Plaintiff asserted claims for breach of contract, breach of good faith and fair dealing, fraud, violation of the FCRA, and negligence against Westlake. Westlake filed a motion to dismiss under South Carolina Rule of Civil Procedure 12(b)(6) based on Plaintiff's failure to state claim, which the circuit court granted. Plaintiff did not appeal the circuit court's formal order. Plaintiff subsequently filed this lawsuit against Westlake in federal court based on the purchase and repossession of the same vehicle, asserting claims against Westlake for breach of contract, fraud, violation of the FCRA, negligence, violation of the RICO, civil conspiracy, violation of the SCUTPA, and conversion.

There is identity of the parties in the state court action and the instant matter, as both lawsuits were brought by Plaintiff against Westlake. The fact that Plaintiff named additional defendants beyond Westlake in the state court action and the present action does not preclude application of the doctrine of res judicata as to her claims against Westlake. *See Machado v. Davis*, C/A No. 4:11–1758–KDW, 2012 WL 4051123, at *7 (D.S.C. Sept. 13, 2012) ("The fact that there were additional defendants in the earlier action does not preclude application of the doctrine of res judicata as to the parties in the present action."); *RFT Mgmt. Co., LLC v. Gilbert*, C/A No. 8:10-02503-HFF, 2011 WL 13142633, at *4 (D.S.C. May 24, 2011) (noting that "[i]t is axiomatic that joining additional defendants in a subsequent action does not allow a plaintiff to litigate claims

against a defendant that were or should have been brought in a prior action against that defendant" and finding that "the presence of additional defendants in this action [did] not disrupt the identity of the parties.").

There is also identity of subject matter, as both lawsuits are related to Plaintiff's purchase of the same vehicle and the vehicle's subsequent repossession. As noted, Plaintiff acknowledges in her Amended Complaint in this matter that she chose to not to appeal the circuit court's formal order dismissing Westlake and instead refiled her complaint in federal court. ECF No. 61 at 51-53; *see Plum Creek Dev. Co., Inc. v. City of Conway*, 512 S.E.2d 106, 109 (S.C. 1999) (noting that the subject matter is the same "when the claims arise out of the same transaction or occurrence that was the subject of a prior action."). Although Plaintiff asserts slightly different claims, in the res judicata context, "'cause of action' is not the form of action in which a claim is asserted but, rather the 'cause for action, meaning the underlying facts combined with the law giving the party a right to a remedy of one form or another based thereon.'" *Judy*, 3712 S.E.2d at 414. "[S]imply seeking a different remedy in the second lawsuit for the same cause of action does not negate the identical nature of the subjects of the two actions." *Id.* "[A] claim for damages is a claim for relief rather than an assertion of a different cause of action for purposes of determining the applicability of res judicata." *Id.* Because Plaintiff's claims in the instant action arise out of the same transaction or occurrence that was the subject of the state court action, there is identity of subject matter.

Further, the circuit court's grant of Westlake's motion to dismiss under South Carolina Rule of Civil Procedure 12(b)(6) constitutes an adjudication of the issue in the first suit. Adjudication of the issue requires that "a final, valid judgment was entered on the merits of the first suit." *Judy v. Judy*, 677 S.E.2d 213, 217 (S.C. Ct. App. 2009). Because the circuit court held that Plaintiff

15

failed to state a claim against Westlake and Plaintiff did not appeal the circuit court's formal order, there was final adjudication of the issue in the first suit. *See, e.g., Jones v. City of Folly Beach*, 483 S.E.2d 770, 773 (S.C. Ct. App. 1997) ("It is generally recognized that a dismissal with prejudice indicates an adjudication on the merits and precludes subsequent litigation to the same extent as if the action had been tried to a final adjudication."); *McLean v. United States*, 566 F.3d 391, 396 (4th Cir. 2009) ("Courts have held that, unless otherwise specified, a dismissal for failure to state a claim under Rule 12(b)(6) is presumed to be both a judgment on the merits and to be rendered with prejudice."), *overruled in part on other grounds by Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2020). Accordingly, Plaintiff's claims against Westlake in the present matter are barred by res judicata, and the undersigned recommends that the district court grant Westlake's Motion to Dismiss.[5]

**The Agora Entities' and the Walt Entities' Motions Pursuant to Rule 12(b)(6)**

The Agora entities and the Walt entities argue that all of Plaintiff's claims should be dismissed because she has failed to state a claim under Rule 12(b)(6). ECF Nos. 72 at 4-21; 78 at 3-19. Plaintiff argues that these Motions should be denied. ECF Nos. 84 at 1-8; 82 at 1-7.

*1. Agora Capital and Agoratrade*

As an initial matter, the Agora entities argue that Agora Capital and Agoratrade should be dismissed because Plaintiff does not make any specific allegations against those entities in the Amended Complaint. ECF No. 72 at 4-5. Plaintiff argues that "allegations against a corporate entity can support individual claims against specific corporate divisions and contractually adjacent

---

[5] Because Plaintiff's claims against Westlake are barred by res judicata, Westlake's remaining arguments are not addressed. *See* ECF No. 71.

entities" and that her Amended Complaint offers factual context that allows for a "reasonable inference of each Defendant's direct and indirect involvement through collective corporate actions." ECF No. 84 at 3.

Plaintiff named Agoratrade in the caption of the Amended Complaint, alleged that Atlantic Acceptance Corp. listed Agoratrade as one of its creditors in its bankruptcy action, and alleged that Agoratrade filed a notice of appearance in Atlantic Acceptance Corp.'s bankruptcy action. ECF No. 64 ¶¶ 41, 45. Moreover, Plaintiff identifies Agora Capital in the caption and in the "Parties" section and alleges that "Westlake did have indirect contractual obligations to the Plaintiff via the assignment of the debt from Agora Data Inc. dba Agora Capital ...." *Id.* ¶¶ 6, 65. Plaintiff does not otherwise mention Agoratrade or Agora Capital in her Amended Complaint.

The Court finds that Plaintiff has failed to set forth any specific factual allegations or wrongdoing from Agoratrade or Agora Capital sufficient to state a claim. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570; *see Hall v. Grant*, C/A No. 602–817–10AK, 2002 WL 32078923, at *3 (D.S.C. July 31, 2002) ("[A] well-pleaded complaint must contain something more than mere conclusory statements that are unsupported by specific facts.") (citation and internal quotation marks omitted); *Deabreu v. Novastar Home Mortg., Inc.*, 536 F. App'x 373, 375 (4th Cir. 2013) ("While *pro se* pleadings must be construed liberally, courts are not required to conjure up questions never presented to them.") (internal citations and quotation marks omitted); *Gibson v. Am.'s Servicing Co.*, C/A No. 5:10–CV–342–FL, 2010 WL 4974552, at *1 n.1 (E.D.N.C. Nov. 30, 2010) (noting that *pro se* pleadings must still meet the requirement of plausibility).

Because Plaintiff has failed to provide any specific allegations regarding Agora Capital and Agoratrade, her Amended Complaint lacks sufficient factual detail to state a plausible claim

against those entities upon which relief can be granted.  *See, e.g., Bilbro v. Haley*, 229 F.Supp.3d 397, 406 (D.S.C. 2017) (granting Hammond's motion to dismiss when the plaintiff only named Hammond in the caption of the complaint); *Cleveland v. Duvall*, C/A No. 8:14-4305-RBH-TER, 2015 WL 6549278, at *3 (D.S.C. Feb. 20, 2015) (dismissing a claim when "Plaintiff offers no specific allegations against the Defendant …."); *Lewallen v. McCarley*, C/A No. 8:21-1171-SAL-MHC, 2022 WL 3161855, at *4 (D.S.C. July 7, 2022) (recommending granting a defendant's motion to dismiss when the plaintiff made "no specific allegations in his Second Amended Complaint regarding any wrongdoing by" that defendant), *R&R adopted by* 2022 WL 3161684 (D.S.C. 2022).  Therefore, the undersigned recommends that the district court dismiss Agora Capital and Agoratrade from this matter.

### 2. The Walt Entities

The Walt entities argue that Walter Auto should be dismissed because Walter Auto never had any relationship with Plaintiff or the vehicle at issue.  ECF No. 78 at 3-4.  The Walt entities assert that Walt and Walter Auto entered into separate MRAs with the Atlantic entities, which covered separate portfolios of RICs.  *Id.* at 3.  Plaintiff's RIC fell under the MRA between Walt and the Atlantic entities, not the MRA between Walter Auto and the Atlantic entities.  *See* ECF

Nos. 47-5; 78-1 at 64.[6]  Because Plaintiff has failed to allege that Walter Auto had a relationship to her or her RIC, Plaintiff has failed to state a claim against Walter Auto.[7]

### 3. Breach of Contract

In her Amended Complaint, Plaintiff alleges that she entered into a RIC with A&K Auto to purchase the vehicle.  ECF No. 64 ¶¶ 14, 56, 61.  Plaintiff alleges that Atlantic Acceptance Corp. was the finance company and lien holder of the vehicle but sold her loan through a MRA to Agora Data.  *Id.* ¶¶ 14, 39, 74.  Plaintiff contends that Agora Data hired Westlake to service the loan.  *Id.* ¶ 39, 65.  Plaintiff alleges that (1) Atlantic Acceptance Corp. and Agora Data breached the RIC by failing to pay A&K Auto for the vehicle and releasing the vehicle back to A&K Auto, (2) Atlantic Acceptance Corp. and Agora Data's breach effectuated the repossession of the vehicle, and (3) Atlantic Acceptance Corp. and Agora Data did not provide her with the notice required by the RIC prior to repossessing the vehicle.  *Id.* ¶¶ 56, 61-63.  Plaintiff does not set forth any allegations against Walt in her breach of contract claim.  *See id.* ¶¶ 55-67.

---

[6] Walt attached a copy of the MRA between Walt and the Atlantic entities to its Motion to Dismiss. *See* ECF No. 78-1.  At the motion to dismiss stage, the Court can consider documents not attached to a complaint if the documents were "integral to and explicitly relied on in the complaint" and there is no authenticity challenge. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).  Although Plaintiff did not attach the MRA between Walt and the Atlantic entities, she referenced the MRA between the parties in her Amended Complaint and, in her Response, did not challenge the document's authenticity.  ECF Nos. 64 ¶ 39; 82 at 1-7. Accordingly, the Court has considered the MRA between Walt and the Atlantic entities herein as integral and explicitly relied on in the complaint."

[7] Even if Agora Capital, Agoratrade, and Walter Auto were not dismissed for these reasons, they should be dismissed for the reasons stated below regarding Agora Data and Walt.  Plaintiff's claims against the remaining Agora entity – Agora Data – and the remaining Walt entity – Walt – are addressed below.

"The elements for a breach of contract are the existence of the contract, its breach, and the damages caused by such breach." *Johnson v. Little*, 827 S.E.2d 207, 210 (S.C. Ct. App. 2019). Plaintiff has not alleged that she entered into a contract with Agora Data. However, even assuming that Agora Data was a party to the RIC or in privity of contract with a party to the RIC,[8] Plaintiff has failed to sufficiently allege that Agora Data breached the RIC. Plaintiff does not set forth any specific allegations that Agora Data had an obligation to provide financing to A&K Auto for the vehicle. Rather, the factual allegations in Plaintiff's Amended Complaint reflect that Atlantic Acceptance Corp. was the finance company and responsible for paying A&K Auto for the vehicle. ECF No. 64 ¶¶ 14, 19, 29, 32. Moreover, Plaintiff does not allege with any specificity that Agora Data released the vehicle to A&K or played any role in the repossession. Instead, Plaintiff alleges that A&K Auto initiated the repossession with the assistance of Roy Owens Towing. *Id.* ¶¶ 23-24. Plaintiff's conclusory allegations fall short of the requirements of *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual development. … A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (citation and internal quotation marks omitted); *Cleveland*, 2015 WL 6549278, at *3 ("The court 'need not accept the [Plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'") (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Moreover, because Plaintiff has failed to

---

[8] "Generally, one not in privity of contract with another cannot maintain an action against him in breach of contract …." *Windsor Green Owners Ass'n, Inc. v. Allied Signal, Inc.*, 605 S.E.2d 750, 752 (S.C. Ct. App. 2004). "'Privity' denotes [a] mutual or successive relationship to the same rights of property." *Thompson v. Hudgens*, 159 S.E. 807, 812 (S.C. 1931).

set forth any allegations against Walt, her breach of contract claim against Walt should be dismissed. Therefore, the undersigned recommends that the district court grant Agora Data and Walt's Motions to Dismiss Plaintiff's breach of contract claim.

### 4. Fraud

A claim for fraud requires a plaintiff to show the following elements:

> (1) a representation of fact; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

*Schnellmann v. Roettger*, 645 S.E.2d 239, 241 (S.C. 2007). "In alleging fraud …, a party must state with particularity the circumstances constituting fraud …." Fed. R. Civ. P. 9(b). "To meet this standard, the complaint must describe 'the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States v. Berkeley Heartlab, Inc.*, 247 F. Supp. 3d 724, 729 (D.S.C. 2017) (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)).

Plaintiff alleges that Agora Data and Walt communicated false information to gain her trust and cooperation "to obligate [her] via financial instruments that [Agora Data and Walt] did not fully and legally finalize and/or execute financially, never intended to honor, and/or deliberately, willfully, and maliciously breached." ECF No. 64 ¶ 69. Moreover, Plaintiff contends that after Walt and Agora Data became aware that Atlantic Acceptance had filed bankruptcy, they fraudulently continued to attempt to collect payments from Plaintiff and reported this illegitimate debt on Plaintiff's credit reports. *Id.* ¶¶ 72-73. Plaintiff alleges that repossessing vehicles that are not in default "to shield their businesses from losses by passing on those losses to … Plaintiff is fraudulent in nature." *Id.* ¶ 76.

21

Although Plaintiff generally asserts that Agora Data and Walt communicated false information to gain her trust and cooperation and tried to collect payments from her, she does not set forth any specific factual allegations of Agora Data or Walt having any communication with her or making any particular false representation of fact. As noted, "a party must state with particularity the circumstances constituting fraud …," Fed. R. Civ. P. 9(b), including "the time, place and contents of the false representations," *Kellogg,* 525 F.3d at 379. Plaintiff has failed to do so. *See Schnellmann*, 645 S.E.2d at 241 ("The failure to prove any element of fraud or misrepresentation is fatal to the claim."). Additionally, Plaintiff has not set forth any allegations that Agora Data or Walt were involved in the repossession of her vehicle. Instead, Plaintiff alleges these actions were taken by A&K Auto and Roy Owens Towing. ECF No. 64 ¶¶ 23-24. Because Plaintiff has failed to allege that Agora Data and Walt made a false a representation of fact or plead her fraud claim with sufficient particularly, the district court should dismiss this claim against Agora Data and Walt.

### 5. Fair Credit Reporting Act

The FCRA was enacted to regulate the consumer reporting industry and ensure fair and accurate credit reporting. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). "To this end, [the] FCRA requires [credit reporting agencies ("CRAs")] to follow procedures in reporting consumer credit information that both 'meet[] the needs of commerce' and are 'fair and equitable to the consumer.'" *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 147 (4th Cir. 2008) (quoting 15 U.S.C. § 1681(b)). "In addition to the duties it imposes on CRAs, [the] FCRA also imposes duties on 'furnishers of information.'" *Id.* (quoting 15 U.S.C. § 1681s-2).

Plaintiff has brought her claim pursuant to 15 U.S.C. § 1681s-2(b). ECF No. 64 ¶ 85. Section 1681s-2(b) provides duties a furnisher incurs if a consumer disputes the accuracy of the

22

information a furnisher reports. "If a consumer notifies a CRA that he disputes the accuracy of an item in his file, FCRA requires the CRA to notify the furnisher of the dispute." *Sanders*, 526 F.3d at 148 (citing 15 U.S.C. § 1681i(a)(2)). Upon receipt of this notice, a furnisher must:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency; [and]
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis ....

15 U.S.C. § 1681s–2(b)(1).

To state a claim for a violation of § 1681s-2(b), a plaintiff must allege that (1) she disputed specific information on her credit report with a CRA, (2) the CRA alerted the defendant of the disputed information, and (3) the defendant failed to reasonably investigate and modify the inaccurate information. *Wilson v. Wells Fargo Bank*, C/A No. 2:22-3594-BHH-MHC, 2023 WL 4466948, at *4 (D.S.C. June 13, 2023), *R&R adopted by* 2023 WL 4458944 (D.S.C. July 10, 2023). "[A] furnisher's duty to investigate is not triggered until it receives notification of a dispute from a [CRA]." *Mavilla v. Absolute Collection Serv., Inc.*, 539 F. App'x 202, 208 (4th Cir. 2013). "Once the duty to investigate is triggered, a furnisher breaches that duty if it fails to comply within 30 days." *Id.*

Plaintiff alleges that Agora Data and Walt were made aware in February 2023, both by Plaintiff and a notice to creditors filed in Atlantic Acceptance's bankruptcy, that the debt regarding

23

Plaintiff's vehicle was illegitimate because Atlantic Acceptance never paid A&K Auto.  ECF No. 64 ¶ 81.  Plaintiff contends that Westlake reported this loan on her credit reports with Experian, Equifax, and Transunion from March 2023 to June 2023, which negatively impacted her credit score and delayed her ability to obtain financing for a different vehicle.  *Id.*  Plaintiff submits that Agora Data and Walt were required to take reasonable measures to resolve this loan once they realized that the debt was illegitimate.  *Id.* ¶ 84.  Plaintiff states she "disputed the tradeline with the Bureaus and with Westlake directly."  *Id.* ¶ 85.

Plaintiff fails to state a claim under § 1681s-2(b).  Plaintiff has not alleged any facts as to when she allegedly disputed information with CRAs.  Moreover, while Plaintiff alleges that she disputed the information with "the Bureaus," she fails to allege with which specific CRAs she disputed the information, how she disputed the information, and other facts to support her belief that these unidentified CRAs notified Agora Data and Walt of the dispute.  Plaintiff contends that she informed Agora Data and Walt about the disputed information, but "notice of dispute given by a consumer directly to the furnisher is not sufficient to trigger the furnisher's statutory duties under § 1681s-2(b)."  *Wilson v. Wells Fargo Bank, N.A.*, C/A No. 2:20-cv-2780-BHH-MHC, 2021 WL 2003524, at *5 (D.S.C. Apr. 30, 2021) (collecting cases), *R&R adopted by* 2021 WL 2003184 (D.S.C. May 19, 2021).  Rather, under § 1681s-2(b), a furnisher's duty to investigate is not triggered until the furnisher is notified of a dispute by a CRA.  *Mavilla*, 539 F. App'x at 208.

Because Plaintiff has not set forth specific factual allegations that she disputed information on her credit report with a CRA and the CRA alerted Agora Data and Walt of the disputed information, she has failed to state a claim under § 1681s-2(b).  Therefore, the undersigned recommends that the district court dismiss Plaintiff's claim under the FCRA against Agora Data and Walt.  *See Wilson*, 2023 WL 4466948, at *4 ("Plaintiff fails to state a claim under § 1681s-

2(b) because she has not alleged any facts as to when she allegedly disputed information, with CRA(s) she disputed the information, how she disputed the information, what information about which account she disputed, and other facts to support her belief that these unidentified CRA(s) notified Wells Fargo of the dispute."); *Blick v. Wells Fargo Bank, N.A.*, C/A No. 3:11–cv–00081, 2012 WL 1030137, at *9 (W.D. Va. Mar. 27, 2012) (dismissing a claim under the FCRA when "Plaintiff's Complaint fail[ed] to allege that any Defendant received notification from a [CRA] regarding Plaintiffs' dispute…."), *aff'd by* 474 F. App'x 932 (4th Cir. 2012).

### 6. Negligence

"To establish a negligence cause of action under South Carolina law, the plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." *J.T. Baggerly v. CSX Transp., Inc.*, 635 S.E.2d 97, 101 (S.C. 2006).

In her negligence claim, Plaintiff alleges that she fractured her left foot in two places and severely sprained her ankle when running to her vehicle as it was being towed. ECF No. 64 ¶¶ 88-92. Plaintiff contends that Agora Data and Walt owed her a duty of care to adhere to the contracts in place, and had they honored these contracts, she would not have injured her foot and ankle. *Id.* ¶¶ 94-96. Plaintiff asserts that Agora Data and Walt's actions proximately caused her injuries. *Id.* ¶¶ 97-99.

Plaintiff's claim is devoid of specific factual allegations against Agora Data and Walt. Plaintiff does not allege that Agora Data and Walt failed to pay A&K Auto or filed bankruptcy. Rather, Plaintiff attributes those actions to Atlantic Acceptance. Additionally, Plaintiff does not allege that Agora Data and Walt played any role in repossession of her vehicle. Instead, Plaintiff attributes those actions to A&K Auto and Roy Owens Towing. As a result, Plaintiff has failed to

sufficiently allege that Agora Data and Walt proximately caused her injuries. *See Hurd v. Williamsburg Cnty.*, 579 S.E.2d 136, 144 (S.C. Ct. App. 2003) ("Proximate cause requires proof of both causation in fact and legal cause. … Legal cause … is proved by establishing foreseeability. … The standard by which foreseeability is determined is that of looking to the natural and probable consequences of the complained of act."); *Parks v. Characters Night Club*, 548 S.E.2d 605, 609 (S.C. Ct. App. 2001) ("Foreseeability is not determined from hindsight, but rather from the defendant's perspective at the time of the alleged breach."). Therefore, the undersigned recommends that the district court grant Agora Data and Walt's Motions to Dismiss Plaintiff's negligence claim.

### 7. Racketeer Influenced and Corrupt Organizations Act

Plaintiff alleges a violation of 18 U.S.C. § 1962 of RICO. ECF No. 64 ¶¶ 101-110. Specifically, Plaintiff alleges that Defendants are "collaborators" and "person[s]" and that Agora Data and Walt are an enterprise engaged in activities which affected interstate commerce. *Id.* ¶¶ 104-105. Plaintiff contends the "Defendant Collaborators" were associated with or participated in Walt's affairs and conducted and participated in the management of Walt through a pattern of racketeering activity. *Id.* ¶¶ 105-106. Plaintiff submits that this conduct "includes financial institution fraud and/or mail fraud and/or extortionate credit transactions." *Id.* ¶ 107.

RICO provides a civil cause of action for "[a]ny person injured in his business or property by reason of a violation" of RICO's substantive provisions in § 1962. 18 U.S.C. § 1964(c). Section 1962 provides, in relevant part, as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ....

18 U.S.C. § 1962(c). Thus, to state a claim under § 1962(c), a plaintiff must allege that "(1) a defendant person (2) employed or associated with (3) an enterprise, engaged in, or the activities of which affect, interstate or foreign commerce, (4) conducts or participates in the conduct of the affairs of the enterprise (5) through a pattern of racketeering activity." *West Town Bank & Trust v. Forman*, C/A No. 2:19-3203-BHH, 2020 WL 6585655, at *4 (D.S.C. Nov. 10, 2020); *see Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

Although Plaintiff lists the elements of a claim under § 1962(c), her Amended Complaint contains legal conclusions and lacks specific factual allegations regarding those elements. *See Nedimyer v. CooperSurgical, Inc.*, C/A No. 3:22-1454-MGL, 2023 WL 5806887, at *11 (D.S.C. Sept. 7, 2023) ("The Court need not accept unsupported legal allegations, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to specific acts, dates, or policies.") (internal citations omitted); *Doe 8 v. Varsity Brands, LLC*, C/A No. 6:22-3508-HMH, 2023 WL 4209843, at *14 (D.S.C. June 27, 2023) ("The requirements of section 1962(c) must be established as to each individual defendant.") (quoting *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)).

Moreover, the United States Court of Appeals for the Fourth Circuit mandates that "[t]he enterprise must be distinct from the persons alleged to have violated § 1962(c)." *Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997); *see New Beckley Mining Corp. v. Int'l Union, UMW of Am.*, 18 F.3d 1161, 1163 (4th Cir. 1994) (finding that the district court properly dismissed a § 1962(c) claim because the defendant persons were not distinct from the alleged enterprises). Plaintiff alleges that Walt and Agora Data are "person[s]" and an "enterprise." ECF No. 64 ¶¶ 103-04. Because Plaintiff has failed to allege a distinction between

Walt and Agora Data as persons and an enterprise, her RICO claim against them should be dismissed.

Additionally, Plaintiff's general allegations about fraud fail to meet the heightened pleading standard, as she did not allege factual details regarding "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Berkeley*, 247 F. Supp. 3d at 729 (citation and internal quotation marks omitted); *see Jones v. Ram Med., Inc.*, 807 F.Supp.2d 501, 513 (D.S.C. 2011) ("[A]llegations of fraud pled as the basis of a RICO claim must meet the heightened pleading requirements set forth in Rule 9(b) of the Federal Rules of Civil Procedure."); *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) ("[P]laintiff must plead circumstances of the fraudulent acts that form the alleged pattern of racketeering activity with sufficient specificity pursuant to Fed.R.Civ.P. 9(b).") (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400-01 (9th Cir. 1986)). Based on the foregoing, the undersigned recommends that the district court dismiss Plaintiff's RICO claim against Agora Data and Walt.

### 8. Civil Conspiracy

Plaintiff alleges that Defendants are liable for civil conspiracy. ECF No. 64 ¶¶ 112-117. The elements of a civil conspiracy claim are: "(1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to the plaintiff." *Paradis v. Charleston Cnty. Sch. Dist.*, 861 S.E.2d 774, 780 (S.C. 2021). "Since civil conspiracy is an intentional tort, an intent to harm … [is] an inherent part of the analysis." *Id.* at 780.

Plaintiff alleges that the Walt entities, Agora Data, and Westlake conspired to collect payments that they were not entitled to and continued to do so after they became aware that Atlantic Acceptance Corp. failed to honor finance agreements with dealerships. ECF No. 64 ¶ 113. Plaintiff submits that the Walt entities, Agora Data, and Westlake conspired to retain illegitimate accounts, which left consumers vulnerable to having their vehicles repossessed. *Id.* ¶ 114.

Plaintiff's general allegations are insufficient to state a claim that is plausible on its face, as she fails to allege any specific facts regarding how Agora Data and Walt conspired with each other, or other Defendants, or any overt acts taken in furtherance of an alleged agreement. *See Middleton v. Georgetown Cnty.*, No. 2023-000615, 2024 WL 3441420, at *1 (S.C. Ct. App. 2024) (dismissing civil conspiracy claim because claimant "failed to assert a foundation sufficient to establish [this claim] and merely set forth conclusory statements without support.").

Plaintiff's claim also fails because she does not allege that Agora Data and Walt acted in furtherance of the conspiracy in a manner separate and independent from her other causes of action. "In a civil conspiracy claim, one must plead additional facts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit the dismissal of the claim." *Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 875 (S.C. Ct. App. 2009), *overruled on other grounds by Paradis*, 861 S.E.2d 774. Stated another way, "[w]here the particular acts charged as a conspiracy are the same as those relied on as the tortious act or actionable wrong, plaintiff cannot recover damages for such act or wrong, and recover likewise on the conspiracy to do the act or wrong." *Id.* at 876; *see Paradis*, 861 S.E.2d at 779-80 (explaining that the court in *Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 278 S.E.2d 607 (S.C. 1981), "correctly concluded the civil conspiracy claim failed as a matter of law" where the "only wrongful acts alleged were those for which damages had already been

sought" and "the plaintiff's repetition of the same acts as the prior claims was insufficient to salvage the claim."); *Jinks v. Sea Pines Resort, LLC*, C/A No. 9:21-cv-00138-DCN, 2021 WL 4711408, at *3 (D.S.C. Oct. 8, 2021) (finding a plaintiff's civil conspiracy claim was subject to dismissal because she did not allege that the defendant "acted in furtherance of the conspiracy in a manner separate and independent from her other causes of action."); *Coker v. Norwich Com. Grp., Inc.*, C/A No. 3:20-03071-MGL, 2021 WL 4037472, at *6 (D.S.C. Sept. 3, 2021) (granting a motion to dismiss a civil conspiracy claim upon finding that a plaintiff "merely reincorporated his previous claims and added conclusory allegations the individuals were engaged in a civil conspiracy."). Therefore, the undersigned recommends that the district court grant Agora Data and Walt's Motions to Dismiss Plaintiff's civil conspiracy claim.

### 9. South Carolina Unfair Trade Practices Act

"SCUTPA declares unfair or deceptive acts or practices in trade or commerce unlawful." *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharm., Inc.*, 777 S.E.2d 176, 188 (S.C. 2015); *see* S.C. Code Ann. § 39-5-20(a). To recover in an action under SCUTPA, a plaintiff must show: "(1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." *Wright v. Craft*, 640 S.E.2d 486, 498 (S.C. Ct. App. 2006) (citing S.C. Code Ann. §§ 39-5-10 to -560).

Plaintiff alleges that "Defendants used unfair and deceptive practices in the conduct of its business with Plaintiff to obtain funds from the Plaintiff …." ECF No. 64 ¶ 120. Plaintiff contends that Defendants' actions "have the potential for repetition and affect the public as a whole" because Defendants "regularly transact business of the kind at issue by entering into finance and debt

30

service agreements with dealerships throughout the United States ….” *Id.* ¶ 122.  Plaintiff alleges that Defendants’ actions were willful and knowing violations.  *Id.* ¶ 123.

Again, Plaintiff’s allegations are conclusory and lack sufficient factual detail to state a claim.  *See Robinson*, 551 F.3d at 222 (“[T]he facts alleged ‘must be enough to raise a right to relief above the speculative level’ and must provide ‘enough facts to state a claim to relief that is plausible on its face.’”) (quoting *Twombly*, 550 U.S. at 555, 570).  Moreover, Plaintiff has failed to allege that Agora Data or Walt engaged in an unfair or deceptive act in the conduct of trade or commerce.  SCUTPA defines “trade” and “commerce” as “the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity or thing of value wherever situate ….”  S.C. Code Ann. § 39-5-10(b).  Plaintiff alleges that Agora Data and Walt purchased her RIC through a MRA from Atlantic Acceptance Corp.  There are no allegations that Agora Data or Walt advertised, offered for sale, sole, or distributed any services or property related to this matter.  Accordingly, Plaintiff’s claim against Agora Data and Walt for violation of the SCUTPA should be dismissed.

### 10. Conversion

Plaintiff alleges that Agora Data and Walt are liable for conversion.  ECF No. 64 ¶¶ 126-129.  Specifically, Plaintiff asserts that Walt was not legally entitled to assign or sell her account to Agora Data and Agora Data was not entitled to assign or sell her account to Westlake.  *Id.* ¶¶ 126-27.  Plaintiff alleges that Defendants did not apply her payments toward any debt, her payments and the vehicle belonged to her, and Defendants are not entitled to retain the vehicle and payments.  *Id.* ¶ 128.

“Conversion is defined as the unauthorized assumption in the exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the owner’s

rights." *Moseley v. Oswald*, 656 S.E.2d 380, 382 (S.C. 2008). Plaintiff groups Defendants together and sets forth conclusory, rather than specific, allegations. *See Twombly*, 550 U.S. at 555, 570. Moreover, although Plaintiff alleges that Agora Data and Walt are liable for conversion of the vehicle, she does not allege that Agora Data or Walt played any role in the repossession or retained the vehicle. As noted, Plaintiff attributes those actions to A&K Auto and Roy Owens Towing. ECF No. 64 ¶¶ 23-24. While Plaintiff alleges that Agora Data and Walt converted her loan, a loan does not fall under the "goods or personal chattels" encompassed by a cause of action for conversion, and Plaintiff has not alleged that Agora Data and Walt could not legally buy or sell the RIC.

Regarding Plaintiff's allegations of her payments towards the vehicle, "[t]here can be no conversion of money unless there is an obligation on the defendant to deliver a specific, identifiable fund to the plaintiff." *Mullis v. Trident Emergency Physicians*, 570 S.E.2d 549, 551 (S.C. Ct. App. 2002) (citation and internal quotation marks omitted). "Money, however, may be the subject of conversion if it is capable of being identified and there may be conversion of determinate sums even though the specific coins and bills are not identified." *Id.* (citation and internal quotation marks omitted). The Court finds that the funds at issue are not subject to a conversion claim because the funds are not identifiable. *See Austin v. Indep. Life & Acc. Ins. Co.*, 370 S.E.2d 918, 921-22 (S.C. Ct. App. 1988) (distinguishing cases in which specific checks were converted and holding that a plaintiff's payment of insurance premiums did "not constitute the type of 'money' which is subject to conversion" because the premiums were "not an identifiable or separate item"); *See Owens v. Andrews Bank & Tr. Co.*, 220 S.E.2d 116, 119 (S.C. 1975) ("[T]here can be no conversion where there is a mere obligation to pay a debt."); *Johnson v. Barner*, C/A No. 3:19-cv-01129-JMC, 2020 WL 4499989, at *9 (D.S.C. Aug. 5, 2020) ("To determine whether the money

was converted, courts look to see if it was in a segregated fund of some sort."); *Senn Freight Lines Inc. v. Am. Inter-Fidelity Corp.*, C/A No. 8:17-cv-02186-JDA, 2020 WL 9894191, at \*8-9 (D.S.C. July 31, 2020) (dismissing a conversion claim when a plaintiff alleged that he paid more in premiums than the defendant was entitled to and that the defendant did not refund him because the defendant had not committed any wrong in accepting the payments and did not have any obligation to not commingle the payments with its other funds); *Ray v. Pilgrim Health & Life Ins. Co.*, 34 S.E.2d 218, 218-19 (S.C. 1945) (dismissing a conversion claim when the appellant did not refund money to the appellee because the appellant had "rightfully received this money and committed no wrongful act in commingling it with its own funds."). Therefore, the Court recommends that Plaintiff's conversion claim against Agora Data and Walt be dismissed.

**Plaintiff's Motion for Service**

Plaintiff filed a Motion for Service on April 4, 2025, requesting that the Court direct the United States Marshal to effectuate service on all Defendants represented by "the Law Office of Smith Robinson." ECF No. 92. Attorneys from Smith Robinson Holler Dubose and Morgan, LLC represent Westlake and the Agora entities. As noted above, the undersigned recommends that the district court decline to grant Westlake and the Agora entities' Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process and uphold jurisdiction. Accordingly, should the district court adopt this recommendation and dismiss Westlake and the Agora entities from this matter, Plaintiff's Motion for Service should be found moot.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, it is recommended that the district court **GRANT** Westlake's Motion to Dismiss (ECF No. 71), **GRANT** the Agora entities' Motion to Dismiss (ECF No. 72), and **GRANT** the Walt entities' Motion to Dismiss (ECF No. 78). Should the district court adopt this recommendation, Plaintiff's Motion for Service (ECF No. 92) should be found **MOOT**. It is further recommended that the district court **DISMISS** the Atlantic entities without prejudice pursuant to Rule 4(m).

**IT IS SO ORDERED.**

s/William S. Brown
United States Magistrate Judge

June 23, 2025
Greenville, South Carolina

*The attention of the parties is directed to the important notice on the following page*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).